IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| JAMES CHARLES CORLETTA, | § | |
| | § | |
| Appellant, | § | |
| | § | |
| v. | § | 5:14-CV-982-RP |
| | § | |
| THE TEXAS HIGHER EDUCATION | § | |
| COORDINATING BOARD, | § | |
| | § | |
| Appellee. | § | |

### ORDER AND OPINION

Appellant James Corletta appeals the entry of summary judgment in favor of Appellee Texas Higher Education Coordinating Board ("THECB"). For the reasons that follow, the Court affirms the Bankruptcy Court's grant of summary judgment.

### BACKGROUND

The instant appeal concerns whether Corletta's guaranties of student loans borrowed from the THECB survived his Chapter 7 discharge in 1997. When the THECB filed a state court lawsuit in 2011 to collect on Corletta's guaranty, Corletta moved to reopen his bankruptcy case, seeking a ruling that this debt was discharged in 1997. The background of this case has been thoroughly discussed by the Bankruptcy Court. What follows is an abbreviated overview of the facts particularly relevant to this appeal.

The THECB is an agency of the State of Texas that administers state-sponsored student loan programs. *See* TEX. EDUC. CODE ANN. §§ 52.01 *et seq.*, 61.021; 19 TEX. ADMIN. CODE §§ 21.51–21.64. It is authorized by the state legislature to issue and sell general obligation bonds of the state of Texas to fund certain loan programs for Texas residents who pursue higher education within the state. *See* TEX. CONST. art. III, § 50b-4 – 50b-7. One such program is the College Access Loan ("CAL") Program, which exists to "provide[ ] alternative educational

1

loans to Texas students who are unable to meet the cost of attendance." *College Access Loan (CAL) Fact Sheet*, Texas Higher Education Coordinating Board, http://www.hhloans.com/index.cfm?ObjectID=21A41908-C7D3-A868-66FB91774CF078CB (last visited May 4, 2015).  CAL loans often require co-signers, and like all loan programs administered by the THECB, the co-signer "assumes all liability for the debt and all fees and expenses associated with the note." 19 TEX. ADMIN. CODE § 21.53.

In 1993 and 1994, Corletta co-signed three CAL loan promissory notes for his friend Joan Durbin.  Each loan agreement contained the following provision regarding co-signors:

> This is a guaranty of payment and not of collection. If for any reasons other than death or permanent and total disability of Borrower, the adjacent Borrower's [*i.e.*,co-signer's] Promissory Note is not paid promptly when due, I will immediately pay the source to the Lender, and I waive any right I might have to require that any action be brought against the Borrower.

(Adv. Dkt. no. 5, Ex. 2, at 9).

In 1997, Corletta filed for Chapter 7 bankruptcy.  (DR No. 5, at 9).  Corletta included the $18,383.66 CAL loan debt on both his Schedule F and Schedule H, indicating that the debt was a "Co-Signed Student Loan." *Id.*  Shortly thereafter, the THECB entered a proof of claim on the CAL debt, stating that "[s]ince guaranteed student loans are not dischargeable except as provided for under Title 11 U.S.C. 523(a)(8), we ask that you determine the dischargeability of this debt." (DR No. 5, at 10).  No further action was taken on the CAL debt, and a few months later the Bankruptcy Court entered an order discharging all of Corletta's dischargeable debts. (DR No. 5, at 11).

After several attempts to collect the student loan debt from Durbin and Corletta, the CAL loans were declared to be in default in November 2005.  *Id.*  In 2011, the THECB filed a state court lawsuit against Corletta to collect under the terms of his payment guaranty.  *Id.*  In 2014, Corletta filed a motion to reopen his 1997 bankruptcy case, and the Bankruptcy Court agreed to

reopen the case "for the limited purposes of ruling on the limited issue of whether the debt owed to the Texas Higher Education Coordinating Board was discharged" in 1997. (Bankr. Dkt. #28).

On April 15, 2014, the THECB filed a motion for summary judgment, which the Bankruptcy Court granted on September 8, 2014. (DR No. 28). Corletta now appeals this decision.

## STANDARDS OF REVIEW

The Bankruptcy Court's findings of fact are reviewed for clear error and its conclusions of law de novo. *Century Indem. Co. v. NGC Settlement Trust (In re Nat'l Gypsum Co.)*, 208 F.3d 498, 504 (5th Cir. 2000); *In the Matter of Coston*, 987 F.2d 1096, 1099 (5th Cir. 1992). A finding of fact is clearly erroneous when "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985) (quoting *United States v. United States Gypsum, Co.*, 333 U.S. 364, 395 (1948)). Additionally, the Bankruptcy Court's denial of a Rule 56(d) motion to allow additional time for discovery will be reviewed for abuse of discretion. *See American Family Life Assur. Co. of Columbus v. Biles*, 714 F.3d 887, 894 (5th Cir. 2013).

## DISCUSSION

Corletta presents thirteen separate issues on appeal. (Appellant's Brief, at 2–3). These issues amount to one central question: did the Bankruptcy Court properly grant summary judgment for the THECB. For clarity, the Court will divide Corletta's issues into five general questions: (1) whether the Bankruptcy Court erred in determining that Corletta is responsible for the underlying debt, (2) whether the CAL loan debt was dischargeable under 11 U.S.C. § 523(a)(8) in 1997, (3) whether § 523(a)(8) apples to co-signors who are not related to the borrower, (4) whether the Bankruptcy Court improperly evaluated the parties' summary judgment evidence, and (5) whether the Bankruptcy Court erred by allowing the THECB to file an application for attorney's fees.

3

### A. Responsibility for the Debt

As a preliminary matter, Corletta argues that he is not responsible for the CAL loans because he did not sign the promissory notes. (Appellant's Brief, at 45). Rather, Corletta argues that he was the victim of identity theft, or in the alternative, that the loans were not signed by an authorized member of the THECB. *Id.* These questions, however, are not properly before this Court. The Bankruptcy Court reopened this case "for the limited purposes of ruling on the limited issue of whether the debt owed to the Texas Higher Education Coordinating Board was discharged" in 1997, not to determine whether the debt was valid. (Bankr. Dkt. #28). Although these questions are currently being litigated in a related state court action, for the purposes of this litigation, Corletta has stipulated that the signatures on the loan application are his and that the debt is valid.

### B. Dischargeability Under 11 U.S.C. § 523(a)(8)

During most of the twentieth century, courts generally allowed for the discharge of student loan debts, just like other prepetition unsecured debts. Richard B. Keeton, *Guaranteed to Work or it's Free!: The Evolution of Student Loan Discharge in Bankruptcy and the Ninth Circuit's Ruling in Hedlund v. Educational Resources Institute, Inc.*, 89 AM. BANKR. L. J. 65, 74 (2015). In the mid-1970s, however, a growing concern about student loan discharge abuse led Congress to begin placing restrictions on the ability to discharge student loan debt through bankruptcy. *Id.* at 74-75. Over the next few decades Congress continued to expand these restrictions, and by 1996, the Bankruptcy Code prevented the discharge of all "educational . . . loans made, insured or guaranteed by a governmental unit or nonprofit institution." 11 U.S.C. § 523(a)(8) (1996).

Corletta's primary argument in this action is that when he filed for bankruptcy in 1997, the law permitted him to discharge his guaranty of the CAL debt. (Appellant's Brief, at 3). The Bankruptcy Court, however, found that the CAL loan was an "educational . . . loan[ ] made, insured or guaranteed by a governmental unit," and as such fell under § 523(a)(8)'s exception to

4

discharge. (DR No. 28, at 15-16 (quoting 11 U.S.C. § 523(a)(8))). On appeal, Corletta disputes (1) that the "educational loans" in § 523(a)(8) refer to loans issued by states, (2) that the THECB is a "governmental unit" under § 523(a)(8), and (3) that the CAL loans were made, insured, or guaranteed by a governmental unit.

1. Are the loans by the state government "educational loans" under 11 U.S.C. § 523(a)(8)?

Corletta first argues that the § 523(a)(8) exemption does not apply because in 1997 "educational loans" only referred to "certain student loan debts guaranteed or insured by the United States." (Appellant's Brief, at 14). Since the Bankruptcy Court agreed that the term "educational loan" is not defined in § 523(a)(8), Corletta claims that "the [c]ourt therefore erred in not looking to congressional intent to ascertain the correct scope of the 1997 statute." *Id.* But while it is true that the term "educational loan" was not defined in the statute, a court should only resort to wading through the mire of legislative intent when a statute is ambiguous on its face. *Rainbow Gun Club, Inc. v. Denbury Onshore, L.L.C.*, 760 F.3d 405 (5th Cir. 2014). Here, such an endeavor is unnecessary.

Section 523(a)(8), as written in 1997, is not ambiguous regarding whether loans provided by state governments qualify as "educational loans." First, as the Bankruptcy Court rightly acknowledged, § 523(a)(8) contains no qualification or limitation stating that it only applies to federally funded student loans—something Congress could have easily included had it intended such a limitation. Second, the statute expressly states that it applies to any "loan made, insured, or guaranteed by a governmental unit." 11 U.S.C. § 523(a)(8) (1997). The Bankruptcy Code defines the term "governmental unit" as the "United States; State; Commonwealth; District; Territory; municipality; foreign state; department, agency, or instrumentality of the United States [. . .], a State, a Commonwealth, a District, a Territory, a municipality, or a foreign state; or other foreign or domestic government." 11 U.S.C. § 101(27). Interpretation of the Bankruptcy Code "is a holistic endeavor," *United Savings Association of*

5

*Texas v. Timbers of Inwood Forest Associates, Ltd.*, 484 U.S. 365, 371 (1988), and as such the only sensible interpretation of § 523(a)(8) is that the loans covered by the statute extend to those made, guaranteed, or insured by the states.

    2. Is the THECB a "governmental unit"?

Even if § 523(a)(8) extends to state loan programs, Corletta argues that this statute does not exempt the CAL loans from discharge because the THECB is not a "governmental unit" and therefore, its loans are not exempt.

As previously stated, any "department, agency, or instrumentality of . . . a State" is considered a "governmental unit" under the Bankruptcy Code. 11 U.S.C. § 101(27). Despite Coretta's arguments to the contrary, the THECB clearly falls under this definition. The THECB was created by the Texas State Legislature in the Higher Education Coordinating Act of 1965, later codified as Chapter 61 of the Texas Education Code. TEX. EDUC. CODE § 61.021, *et seq*. Its powers and responsibilities are specifically delineated by the state legislature. TEX. EDUC. CODE § 61.021 ("[The THECB] shall perform only the functions which are enumerated in this chapter and which the legislature may assign to it."). And it is authorized to issue and sell general obligation bonds of the state of Texas to fund its loan programs. TEX. CONST. art. III, § 50b-4–50b-7. At the very least, this establishes that the THECB is an "agency, or instrumentality" of Texas.

Corletta, however, asserts that the THECB fails several court-created tests for determining whether an entity is a governmental unit. For example, Corletta cites *In re Kahl*, 240 B.R. 524 (E.D. Pa. 1999)—a case which Corletta characterizes as "on all fours with Appellants' case." (Appellant's Brief, at 31-32)—for the proposition that the THECB fails the so-called "government unit test." *Id.* As a preliminary matter, in *In re Kahl*, the court was considering whether the THECB was a government agency for Eleventh Amendment purposes, not whether it was a governmental unit under the Bankruptcy Code. But even so, the court *did* find that the THECB was a government agency, and therefore granted the agency immunity

6

under the Eleventh Amendment. So rather than cutting against the Bankruptcy Court's conclusion, *In re Kahl* supports it.

Similarly, Corletta argues that the THECB fails the "governmental function test" articulated in *TI Federal Credit Union v. DelBonis*, 72 F.3d 921 (1st Cir. 1995). *TI Federal Credit Union* involved educational loans provided by the Texas Instruments Federal Credit Union. 72 F.3d 921, at 925. The First Circuit held that in order to demonstrate that federal credit unions are instrumentalities of the United States, they must have "an active relationship with the federal government." *Id.* at 931. Corletta argues that since the THECB cannot show "an active relationship with the federal government," it cannot be a governmental unit under 11 U.S.C. § 101(27). Corletta would be correct if the present suit concerned whether the THECB was an instrumentality of the *federal government*. But the THECB claims to be an instrumentality of the *Texas state government*, meaning that it must only show that it has "an active relationship" with the State of Texas. And as the discussion above explains, it clearly does.

3. Are the CAL loans made, insured, or guaranteed by the THECB?

Corletta next argues that the CAL loans are not insured or guaranteed by the THECB or state of Texas, and thus do not fall under § 523(a)(8)'s exception for "educational . . . loans made, insured or guaranteed by a governmental unit." (Appellant's Brief, ay 30-31). But Corletta does not dispute that the CAL loans were at least *made by* the THECB. As the Bankruptcy Court correctly noted, the THECB is listed on the promissory notes as the lender, making them the "maker" of the loan under any common definition. (Bankr. Op., at 21). So there is no need to determine whether the THECB guaranteed or insured the loans.[1]

---

[1] Governments do not guarantee the loans that they issue themselves. Rather, governments guarantee loans issued by private lenders. For example, until just recently, the federal government ran the Federal Family Education Loans ("FFEL") program, which allowed private lenders to issue federally guaranteed loans. Under the FFEL program, if a borrower defaulted on their loans, the government would pay the lender the majority of the debtor's principal balance and assume the right to collect payments on the debt. Contrast this program with the Direct Loan Program ("Direct")—a program where loans themselves are issued by the federal government. Under the FFEL program the federal government is guaranteeing the loan. Under the Direct program the federal government is making the

### C. Unrelated Cosigners

Corletta also contends that the Bankruptcy Court erred in determining that § 523(a)(8) applies to unrelated cosigners. (Appellant's Brief, at 25). The language of § 523(a), however, provides that it applies to "individual debtor[s]"—making no distinction between student debtors and non-student co-signors, whether related or not. This language has led Texas Bankruptcy Courts to conclude that the purpose of § 523(a)(8) is "the loan, not the beneficiary of the education." *In re Varma*, 149 B.R. 817, 818 (N.D. Tex. 1992); *see also In re Mackey*, 153 B.R. 34, 35 (Bankr. N.D. Tex. 1993) ("[T]he statute does not refer to student debtors but limits the discharge of any individual debtor for any debt for covered educational loans." (citing *In re Pelkowski*, 990 F.2d 737, 741 (3d. Cir. 1993)). Corletta has failed to persuade the Court that it should depart from the plain language of the statute and the weight of authority on this issue.

### D. Evaluation of Summary Judgment Evidence

Corletta argues that there were several issues with the way the Bankruptcy Court evaluated the parties' evidence on summary judgment review.[2] This Court reviews the Bankruptcy Court's findings of fact for clear error. Corletta has not met his burden to show that any of the Bankruptcy Court's findings of fact failed to meet this highly deferential standard. *United States v. Rodriguez*, 630 F.3d 377, 380 (5th Cir. 2011) (holding that a finding of fact was not clearly erroneous merely because the reviewing court would have weighed evidence differently and made different findings).

### E. Rule 56(d) Motion For Additional Time for Discovery or to Defer Consideration

Appellant next contends that the Bankruptcy Court abused its discretion by denying Appellant's Rule 56(d) motion for additional time for discovery or, in the alternative, to defer

---

loan. The CAL loans are similar to the Direct loans; and thus, there is no reason to examine whether the loans were guaranteed.

[2]   In short, Corletta disagrees with the Bankruptcy Court's failure to credit his evidence and disregard that of the THECB. This is simply not enough to establish clear error.

consideration of the THECB's Motion for Summary Judgment.[3]  Appellant claims that "by filing its Motion for Summary Judgment simultaneously with the filing [sic] of its Answer, [t]he THECB has unfairly prejudiced Appellant's ability to not only respond to the government unit issue but also the other new issues concocted by the THECB."  (Appellant's Brief, at 46).  Beyond this, however, Corletta provides no arguments or authorities that indicate that the Bankruptcy Court decided his Rule 56(d) motion in error.  Therefore, Corletta has failed to meet his burden to demonstrate that the Bankruptcy Court abused its discretion by failing to provide additional time for discovery or deferring its consideration of the THECB's Motion for Summary Judgment.

### F.  Attorney's Fees

Finally, Corletta argues that the Bankruptcy Court erred by ordering that the THECB may file an application for attorney's fees.  (Appellant's Brief, at 47).  Corletta claims that there is no statutory ground for awarding attorney's fees, so the Bankruptcy Court should prohibit the parties from filing an application.  But Corletta misreads the Bankruptcy Court's order.  The order did not decide that the THECB *would* be granted attorney's fees, it simply set a deadline for the THECB's application for fees.  If Corletta wishes to contest the THECB's statutory authority to receive attorney's fees in a § 523(a)(8) case, he may bring these arguments in an objection to the THECB's application.  BANKRUPTCY LOCAL RULE 7054(a)(2).

### CONCLUSION

For the foregoing reasons, the Court holds that CAL debt was not discharged through Corletta's chapter 7 bankruptcy in 1997.  Accordingly, the Bankruptcy Court's grant of summary judgment to the Texas High Education Coordinating Board is **AFFIRMED**.

**SIGNED** on May 19, 2015.

---

[3] Rule 56(d) provides that "if a nonmovant shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition" to the moving party's motion for summary judgment, "the court may: (1) defer considering the motion [for summary judgment] or deny it, (2) allow time to obtain affidavits or declarations or to take discovery, or (3) issue any other appropriate order." FED. R. CIV. P. 56(d).

9

_____

ROBERT L. PITMAN
UNITED STATES DISTRICT JUDGE